Leon KOEHN, Barbara Koehn, Daryl Koehn, Charlene Koehn–Agnew, and Cheryl Yvonne Koehn–Ebeling

v.

Carl AYERS, David Ayers, John H. Ayers, Richard C. Ayers, Debbie Ayers Andrews, Robert Clark, individually and as agent for Howell Properties, North Central Oil Company, and The Texas Company n/k/a Texaco Exploration and Production, Inc.

Civil Action No. G–97–470.

United States District Court,
S.D. Texas,
Galveston Division.

Nov. 19, 1998.

954

David A. Jameson, Attorney at Law, Galveston, TX, mediator pro se.

Robert J. Filteau, Filteau Sullivan & Georgantas, Houston, TX, for plaintiffs.

William D. Bonham, Bonham & Carrington, Houston, TX, for Carl Ayers, David Ayers, John H. Ayers, Richard C. Ayers, Debbie Ayers Andrews, defendants.

Grant P. Harpold, Hargis and Harpold, Houston, TX, for Robert Clark, defendant.

James Harrison Miller, Attorney at Law, Houston, TX, for North Central Oil Company, defendant.

Alton J. Hall, Jr., Wickliff & Hall, Houston, TX, for The Texas Company aka Texaco Exploration & Production Company aka Texaco Exploration and Production Inc., defendant.

### ORDER GRANTING TEXACO'S AND NORTH CENTRAL OIL CORPORATION'S MOTIONS FOR SUMMARY JUDGMENT AND SUA SPONTE DISMISSAL OF ALL PENDENT STATE LAW CLAIMS

KENT, District Judge.

Plaintiffs (the "Koehns") bring various causes of action under federal and state law for damages resulting from the alleged dumping of hazardous and toxic materials on land purchased by the Koehns in 1992. Now before the Court is Defendant Texaco's Motion for Summary Judgment and/or Dismissal filed September 14, 1998. Also before the Court are Defendant North Central Oil Corporation's Motion to Dismiss under Fed. R.Civ.P. 12(b)(6), filed September 14, 1998, and Motion for Summary Judgment filed September 22, 1998. For the reasons stated below the Motions for Summary Judgment are **GRANTED,** and the Motions for Dismissal are therefore **MOOTED.**

### I. FACTS

In March of 1992, Plaintiffs purchased two plots of land, known as lots 26 and 27, in Brazoria County, Texas from the Ayers Defendants. The Ayers received the property from the estate of Mrs. O.M. Halligan in or around 1950. Halligan had previously executed an oil, gas and mineral lease in 1933 (the "Halligan lease"), which was later assigned or transferred to the Texas Company, now known as Texaco Exploration and Pro-

duction Company ("Texaco"). In 1936, Texaco gained permission from Halligan to place a saltwater disposal pit on lot 26. The pit was used for the disposal of saltwater from the Halligan lease and other leases through the 1960's. Plaintiffs allege that the pit was also used for the disposal of unauthorized, hazardous oil field wastes.

North Central Oil Company ("NCOC") purchased certain assets from Texaco effective August 1, 1994, including the Halligan lease. According to Plaintiffs, NCOC's agreement with Texaco provided that NCOC would assume the obligations of Texaco and defend and indemnify Texaco from and against all claims made in connection with the lease, including those arising out of personal injury, property, or environmental damage. Plaintiffs also allege that NCOC undertook an extensive review of filings maintained by the Railroad Commission of Texas and the Texas Natural Resource Conservation Commission, and as a result of that independent review was aware of the conditions present on the Halligan lease and of the past practices of Texaco.

The Koehns now bring this action against the various Defendants for property damage, injuries to livestock, and personal injuries. Against Defendants Texaco and NCOC the Koehns allege causes of action for negligence and gross negligence, nuisance, trespass, toxic assault and battery, fraud, statutory fraud, and conspiracy, as well as violations of various environmental statutes. The Koehns' claims against NCOC are premised upon their allegation that NCOC is the successor-in-interest to Texaco's obligations. In light of this Court's determination that Texaco's request for dispositive relief should be granted, and consequently NCOC's as well, the Court finds it necessary to address only the arguments presented by Texaco.

## II. ANALYSIS

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth set forth specific facts showing that there is a genuine issue for trial. *Id.; see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### A. Personal Injury Claims

Texaco argues that the Koehns' personal injury claims must be dismissed because they cannot prove either that they were exposed to any hazardous substance in the saltwater disposal pit or that their alleged personal injuries were medically caused by exposure to any substance in the pit. The Koehns respond that the burden is on Texaco to disprove their exposure to toxic materials and to negate that their injuries were medically caused by exposure to toxic substances in the pit. This is a fundamental misreading of a plaintiff's burden under Fed. R.Civ.P. 56. As the party moving for summary judgment, Texaco discharges its burden by "pointing out" that "there is an absence of evidence to support" Plaintiffs' case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden then shifts to the Plaintiffs to come forward with probative evidence demonstrating the existence of a genuine issues of material fact. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56. Specifically, in an action for personal injuries allegedly caused by exposure to a toxic substance, the plaintiffs must come forward with sufficient competent evidence to prove both that they were actually exposed to a toxic substance and that there is a causal link between the plaintiffs' exposure and the plaintiffs' alleged injuries. *See, e.g., Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 194, 199

(5th Cir.1996) ("Scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case."). In the instant case, the Koehns have failed to come forward with any credible evidence that they were exposed to toxic materials allegedly in the pit or that injuries and illnesses they may have suffered were medically caused by such exposure.

To begin with, the Koehns offer no evidence of groundwater contamination. To the contrary, the two sets of tests conducted on their property failed to detect any contamination. Specifically, the expert reports show that in 1995 NCOC sampled and tested water from a water well on Plaintiffs' homestead and those test results showed no evidence of hydrocarbon contamination. In February of 1998, Plaintiffs themselves drilled four wells at locations surrounding the pit area including areas between the pit and their home. They conducted tests for groundwater contamination but found none. Plaintiffs now offer a supplemental expert report which attempts to discredit the testing conducted by their own expert. The report does not offer positive results of contamination—the proof that is necessary to support any claims the Koehns have of exposure to contaminated groundwater—but instead merely challenges the accuracy of their previous tests.

Plaintiffs' fall-back position is that they could have been exposed to toxic materials through other "exposure pathways" such as rainwater runoff, airborne transmission, or dermal contact. In support of this argument, they offer a report from Texas Veterinary Medical Diagnostic Laboratory stating that rainwater puddles in the cattle pasture where the pit is located contained traces of petroleum. This report alone, which is included without explanation or interpretation, is insufficient as a matter of law to establish a material fact issue as to whether the Koehns or their livestock were exposed to sufficiently dangerous levels of hydrocarbons to have likely caused their injuries. The Court would view this case in a radically different light if Plaintiffs had discovered toxic levels of lead, arsenic, or some other dangerous element in their well water, but the proof before this Court offers no such comparable evidence. Indeed, as to exposure, Plaintiffs have offered no credible evidence at all.

The Koehns have also failed to proffer any meaningful evidence on the issue of medical causation. They submitted expert reports from two experts which contain generalized statements about the link between some toxins allegedly in the pit and various illnesses including autoimmune disorders which are among the conditions complained of by Plaintiffs. Neither expert appears to have actually examined the individual Plaintiffs, considered their medical history, or offered any substantiated conclusions about the medical probability that these Plaintiffs' injuries were caused in whole or even in part by exposure to environmental toxins. None of the reports submitted by the Koehns even suggest that they are a statistical anomaly representing a higher than normal incidence of the various conditions they complain of. Without an opinion from at least one doctor that there is a reasonable medical probability that the specific illnesses complained of by the individual Plaintiffs resulted from exposure to toxins associated with the pit, the Plaintiffs' claims must fail as a matter of law. This is certainly not to say that the Court is unconcerned with the Plaintiffs' health problems. But, Plaintiffs' feelings of concern and apprehension, while understandable, are just not enough to show the necessary demonstrable causal link between the Defendants' conduct and the illnesses allegedly suffered by the Plaintiffs.

█ The Koehns' argument that Defendants' Motions are premature also fails. Though the deadline for discovery is not until December 4, 1998, the deadline for Plaintiffs' expert reports expired August 28, 1998. The Koehns have had more than ample time both to undergo physical examination and consultation with physicians and also to conduct thorough and extensive testing for contamination of their property. The unsubstantiated statement that, well beyond the expert designation/report tender deadline, they are in the process of establishing a "nexus" between substances allegedly in the pit and

their illnesses cannot save these claims. Furthermore, the Court is disturbed by Texaco's allegations that the Koehns are continuing to conduct tests for contamination on the property without notifying Texaco and long after the deadline for submission of Plaintiffs' expert reports has passed.

In sum, the Plaintiffs' have adduced no competent evidence to defeat summary judgment on the issues of exposure to toxins or medical causation and thus Summary Judgment is **GRANTED** with respect to Plaintiffs' claims for personal injuries against Texaco and those claims are **DISMISSED WITH PREJUDICE.**

### B. Property Damage Claims

■ The Koehns claim that the value of their property is diminished by the allegedly toxic disposal pit. As Texaco points out, Texas law bars purchasers of real property from asserting claims for property damage that occurred before the purchaser owned the property unless the deed expressly transfers the cause of action to the purchaser. *See Lay v. Aetna Ins. Co.,* 599 S.W.2d 684, 686 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.) ("A cause of action for injury to real property ... is a personal right which belongs to the person who owns the property at the time of injury and ... [w]ithout express provision, the right does not pass to a subsequent purchaser of the property.")

■ Even if a transfer of rights of action was effected in the deed or contract for sale of the property at issue, Plaintiffs' property damage claims are barred by the two-year statute of limitations. Any injury to the land occurred many, many years ago, and "[w]here the injury to land results from a thing that the law regards as a permanent nuisance, the right of action for all the damages resulting from the injury accrues to the owner of the land at the time the thing that causes the injury commences to affect the land." *Vann v. Bowie Sewerage Co.,* 127 Tex. 97, 90 S.W.2d 561, 562 (Tex.Com.App. 1936). Records indicate that in 1936 Texaco received permission from the owner of the property to construct a saltwater disposal pit. Texaco constructed the pit in 1936 and operated the pit until at least 1953. Texaco offers an expert report stating that the pit

has been closed since before 1965. This conclusion is based upon aerial photographs of the site taken in 1964 which demonstrate that "there was already a vegetative cover in the central portion of the former pit area." Plaintiffs offer no controverting evidence. Furthermore, the Koehns purchased the property in 1992 but did not discover the pit until 1995. Clearly if the pit had been used at the time of purchase for open storage, the Koehns would have discovered it. It is therefore undisputed that the pit has not been used for several decades. Given the consent received from the previous owner and the operation of the pit for at least twenty years after consent was granted, the only conclusion to be drawn is that the pit was open, obvious, and known to the previous owners. Consequently, any claim for property damages belonged to the prior owners and expired years ago. The subsequent transfer of the property to the Koehns does not revive any claims which were barred by limitations with respect to the previous owner. Plaintiffs' extensive discussion of the discovery rule is not relevant to the limitations issue because the damage occurred prior to Plaintiffs' purchase and was discoverable to the previous owners. Accordingly, Texaco's Motion for Summary Judgment on Plaintiffs' property damage claims is **GRANTED.**

### C. Statutory Violations

■ The Koehns attempt to survive summary judgment on their claims that Texaco and NCOC violated environmental statutes by stating that "there exists the possibility that [Texaco and NCOC] are an operator of a facility in which a chemical spill occurred for which they will be responsible for conducting a clean up." This allegation is not sufficient as a matter of law to establish a material fact issue as to any statutory violations by Defendants. Despite the fact that the discovery deadline does not expire until December 4, 1998, Texaco's Motion must be granted because Plaintiffs have utterly failed to provide *any* credible evidence that a chemical spill occurred or to even specifically plead the RCRA and CERCLA violations alleged. If such evidence existed, it should have been discovered and submitted by August 28,

1998, the deadline for submission of Plaintiffs' expert reports. Texaco's Motion for Summary Judgment on the statutory claims is therefore **GRANTED.**

### III. CONCLUSION

For the reasons set forth above, Defendant Texaco's Motion for Summary Judgment is **GRANTED** and all claims against Texaco are **DISMISSED WITH PREJUDICE.** Plaintiff's claims against North Central Oil Corporation arise from NCOC's status as successor-in-interest to any obligations owed by Texaco; consequently, Defendant North Central Oil Corporation's Motion for Summary Judgment is also **GRANTED** and all claims against NCOC are **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to file no further pleadings before this Court regarding these Defendants, particularly including motions to reconsider and the like, unless supported by *compelling* new evidence not available at the time of submission of the instant pleadings. All further relief shall be sought in the United States Court of Appeals for the Fifth Circuit as may be appropriate.

Finally, to the extent that Plaintiffs' Complaint asserts pendent state law claims against the remaining Defendants, this Court exercises its discretion to decline supplemental jurisdiction over those causes of action. Any and all state law claims against the remaining Defendants are **DISMISSED WITHOUT PREJUDICE.** The parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**IT IS SO ORDERED.**

### FINAL JUDGMENT

For the reasons set forth in the Court's Order entered this date, the Motions for Summary Judgment of Defendants Texaco and North Central Oil Company are **GRANTED** and such claims are **DISMISSED WITH PREJUDICE.** Plaintiffs' pendent state law claims against the remaining Defendants are **DISMISSED WITHOUT PREJUDICE.** The parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**